3 20 0 4 4 5 consolidated with 3 20 0 4 4 6 the people of the state of illinois appley versus zevion are marks appellant uh miss acefa you may proceed thank you good afternoon your honors and may it please the court my name is lidette asafa and i represent the appellant zevion marks along with my co-counsel 7 11 law student andrew hartford we are here on behalf of zevion marks a teenager who is serving 45 years in prison for a crime that occurred when he was 14 years old we ask that this court vacate zevion's convictions and remand for a new trial or alternatively vacate his sentence and remand for a new sentencing hearing because of a series of failings in the trial court that resulted in an improper decision to transfer a racially biased jury an unjustifiable conviction and an unconstitutional and disproportionate sentence so i will be addressing transfer and sufficiency of the evidence and mr hartford will address the jury issue as a 14 year old boy at the time zevion was presumptively under the juvenile court's the juvenile court act requires an individualized careful balancing of statutory factors to determine whether discretionary transfer to adult court is appropriate these factors are there for a reason to ensure that the law is calibrated to meaningfully acknowledge the unique attributes and needs of children despite the seriousness of their offenses a decision to transfer a child has grave consequences it erases the child's youth and treats that child as an adult imposing adult punishments and retribution but here the fix was in despite multiple mitigating factors that weighed against transfer to adult court the juvenile court steamrolled past any positive facts of zevion positive facts for zevion perverting the mitigating evidence into aggravating factors and making unreasonable inferences that all but ensured that transfer was the ultimate outcome errors permeated the transfer hearing a few of the factors are worth highlighting here regarding zevion's mental health and educational history the juvenile court abused its discretion by unreasonably misconstruing expert testimony from dr eckert dr joel eckert a clinical psychologist who determined that zevion was borderline impaired in his iq assessment so i hate to ask you about that because i read the record very very carefully and i read the doctor's testimony very very carefully and when the judge asked him what his opinion was he said my opinion is based on two interviews with him his school records in the interview with his mother that is where i used to say to the same conclusion that his current test results are less adequate than they should have been and it is my professional opinion that under optimal circumstances he would be functioning my best guess my professional opinion between 70 and 85 and then when asked again dr eckhoff said i really would like another opinion i don't have a lot of confidence in my opinion go ahead um that's correct your honor um our um position here is that um it's not that the courts sort of discounted um or um discredited that the expert which the courts can do our position here is that the court sort of took that testimony and misconstrued it in a way that was harmful to zevion because the court sort of interpreted as this insidious sort of manipulative actions on part of zevion to underrepresent his true abilities and um the court i the expert was asked that question about do you think that he intentionally skewed his results downward in any way and he said in my professional judgment that you know while that's possible that's certainly not what happened here and he also noted that as you said under optimal circumstances he would test higher but he noted that he's you know incarcerated um so um he he said that he was zoned out for part of you know for and he was spaced out for part of these testimony which again doesn't um reasonably lead to a conclusion that he was manipulating the results in a way to advantage himself which is what the the the inference that the judge took from that um but the judge but the but the doctor also said and what the judge and and the doc judge did not what the doctor also said that his academic scores his achievement test scores and his performance in school were absolutely inconsistent with a person who scored what correct and that created the the the experts sort of uncertainty about the results however he still testified that his professional judgment is that savion scored below average in his intelligence testing even considering that he had average test scores um but again that doesn't um the issue is not about the confusion around the test scores but more about the the courts taking that and and interpreting that as sort of this manipulation of on the part of savion which is that the record does not support that um and as additional can you cite to me in the record where the judge concluded that savion manipulated the test scores yes um so on um supplemental record 193 um the judge says dr dr ecker did express a great deal of concern about the testing he administered to the minor because it was not consistent with his school records or the testing that the minor had received at school um and we do know that the minor has a history of being able to provide what i believe are misleading tests or assessment results um and then he says similar things regarding um the iq or excuse me regarding the probation um testimony as well that probation officers testified that he um oh and another and a record for that is supplemental record 198 where um he says that um savion had deceived two very experienced probation officers when the probation officers testified positively that he was compliant with supervision was compliant with um his programming um so um regarding um so when transfer to criminal court occurs the prosecution and trial of such a child must be handled with exceptional care in light of the elevated criminal exposure for child defendant particularly when one of the harshest criminal penalties de facto life sentence is at stake but savion's prosecution and conviction proceeded without sufficient evidence to prove beyond a reasonable doubt that he personally discharged a firearm and thus do not justify a 25-year discretionary firearm enhancement that more than doubles his adult his adult sentence of 45 years and so to secure that conviction of unlawful possession of a firearm in the 25 additional years what is the evidence that the state used here the state offered a single eyewitness testimony of tb that is logically inconsistent and uncorroborated this case involves two individuals one gun one person in a dark hoodie and one person in a white hoodie so your time is up uh you'll have time in reply okay and i believe at this time an associate of yours is coming on screen that is correct okay well thank you mr hartford you may proceed good afternoon your honors may it please the court my name is andrew hartford for the appellant savion marks a jury with a racially biased juror convicted savion marks at the trial court that fact is unequivocal juror short affirmatively stated that he thought black people were more likely to commit crimes than white people while we believe that the trial court's failure to remove juror short was a due process violation i will focus on the ineffective assistance of counsel claim we asked the court to vacate savion's conviction and grant him a new trial because trial counsel was ineffective for failing to move to strike juror short juror short stated he thought african-americans are more likely to commit crimes than white people trial counsel did not ask to strike juror short from the panel that failure to strike constitutes nothing short of clear ineffective assistance of counsel given what was the dialogue mr hartford uh i mean let's have a whole context here what was the question put to the juror yes your honor uh the juror was asked whether or not he thought black people were more likely to commit crimes than white people um he responded yes it seems that way um and based uh he he then blamed some news sources as to why he believed that but nonetheless he did affirmatively state that he thought black people were more likely to commit crimes than white what was the affirmative statement it was a response uh your honor to the give me the words uh the question itself was um do you believe that black people are more likely to commit crimes than white people um he says specifically on page 77 of the record what about african-americans do you think they're more likely to commit crimes than whites and mr uh short responded yes it seems that way you know well you're yes it seems that way is that what he said yes your honor and then what else did he say if anything he said yeah if you watch the news you yes he finished with the affirmative yes if you watch the news yes and it's true your honor it's it's not he does blame a third party but that in no way takes away from the explicit bias that he exhibits uh in in that response what's an explicit bias mr hartford an explicit bias uh here is is his opinion that um before he even walks into a courtroom uh that somebody who is african-american is at partially in his mind partially the way they're having committed a crime just by the color of his skin well that's a uh your honor this would be racial bias uh against black people uh in in considering them to be more likely than white people to commit crimes so his statement it seems that way in the context from the media is that what he does follow it he does follow it up by saying um that you know that he blames it on the media and uh it's it's true um that he does he does say that it's the media's fault but nonetheless he still believes it does him say what the media what well he he says that uh he based his uh opinion on what he's seen in the media and while that may be uh the case it in no way takes away from the fact that he goes into that courtroom with the opinion be it from the news media or from somewhere else that black people are more likely to commit crimes than white people and on top of that counsel for zavian didn't object to that whether or not what did he say thereafter were there any questions put to him thereafter by either the court or um any counsel in the courtroom uh they did uh speak uh counsel did speak with the uh juror about um his uh handgun possession um what type of what type of television he liked to watch some some other uh exchanges but none of them made up for the fact that he stated in open court that he thought black people were more likely to commit crimes than white people didn't he indicate that he thought he could be fair and impartial and set that aside he did your honor um and that that may have been the case uh we we don't know um for purposes of of an ineffective assistance of counsel claim um this is just such a serious violation the fact that he even exhibited this whether or not he followed it up with some level of impartiality um should have triggered a response in zavian's um in zavian's uh uh counsel's mind that he needed to strike move to strike that juror for cause um and there's really no uh additional um assurances or uh statements that can be made to cure such a prejudicial opinion um on behalf of juror short and where there's no valid strategic reason for an action um in this case uh the uh lack of action on behalf of trial counsel and moving to strike um juror short uh it fails that first prong of strickland which is uh to show that an unreasonable um action was taken on behalf of the of the uh on behalf of the defendant strickland has a second prong um of prejudice and supreme court recognized in weaver versus that that can be shown where a particular violation is so serious that it renders a trial fundamentally unfair and your honors there are few if any more serious violations that render a trial unfundamentally unfair than a juror believing a defendant is predisposed to guilt because of the color of his skin that is a structural error and it undermines the grant him a new trial a fair trial that his counsel should have called for in the first place thank you uh questions from the court no okay thank you mr hardford uh you and your co-counsel will have opportunity and reply okay thank you mr nicolosi response yes good afternoon your honor may it please the court uh counselors uh the state submits uh that this court should affirm um the defendant's transfer into adult court um and his conviction and his sentence in this case uh starting with issue one the transfer the state believes the the court did not abuse its discretion in deciding to transfer uh the defendant um as i state repeatedly in my factors when considering whether to transfer a minor into adult court are the seriousness of the offense and the prior history of delinquency of the minor and the state submits that those the evidence in this case is very strong on both factors um quite obviously the the crime committed here and the evidence that they had at the time was was a very uh a very very serious crime uh heard uh defendant um in an attempt to rob um darius fair pulled a gun on him and shot him to his death um his girl fair's girlfriend was with him at the time knew who defendant was through facebook um confident very confident in her identification that all gave probable cause to arrest defendant and charge him and why are we talking about this thought your issue was on the transfer well this is that's the most serious factor in a transfer your honor and and the seriousness of the fence and the defendant's prior record of course those are case laws established those are the two most prominent factors consider um you know that your honors and and counsel um discussed dr record and and the evidence of his testing and his education and stuff while that's all fine to consider of course it's not the most but it's not the most prominent fact it needs to be um and i think the record shows that the trial court considered all of the factors that he was required um in this state talked about the defendant's age talked about the defendant's um turbulent upbringing he considered all those things all the mitigating factors the fact that the defendant uh graduated from school um things of that nature considered mitigating factors but again the state submits their the overwhelming um aggravating factors in this case that that really point to transfer again uh let's talk about the prior history again one of the two most important factors in this case just about six months before the instant case defendant was uh adjudicated delinquent for an armed robbery another incredibly serious crime where he um he pulled a gun on another individual put the gun in the person's mouth broke his teeth forced him to strip naked um this is two incredibly serious crimes in a six month passage of time that considered with the instant uh crime uh and the other evidence there's just nothing that that um can outweigh the those two facts in this case the state submits the trial court properly analyzed everything put all his considerations on the on the record and the state submits that the court did not abuse its discretion in transferring mr nicoletti are there any cases that you can tell us about that discuss the impact of miller and buffer on the consideration of the seriousness of the offense are we talking about the transfer your honor are we talking about sentencing i'm talking of you're talking about the transfer uh your honor i don't i don't know if there are any cases offhand where that those considerations you think that there should be some consideration um your honor i i think the the transfer the law on transfers has been established that these are the items that the court is to consider i wouldn't know what else the court could consider not history and the behavior and the emotional and things of the defendant i don't know what what else the court would be to consider except for these factors at the time when was it established that the seriousness of the crime is the primary factor i don't i don't have this site is certainly in my brief um your honor i can look it up if you'd like it like it need to do that well for purposes of my question i'd like for you to tell me yeah well actually then i'm gonna correct myself it's actually in the statute itself that the the more weight should be given to the seriousness of the alleged offense and the minors prior record of delinquency other factors listed in the subject so i guess it goes even earlier than i i originally thought it's actually in the statute itself okay so in 2012 the u.s supreme court decided miller and they said that when you're dealing with juveniles there's some other considerations that come into play has there of miller on the decision with regard to juvenile transfer to adult court um relative to the seriousness of the offense but i not that i'm aware of i certainly didn't look that up so either it could be there they could not be um but again i i was under the impression miller and buffer and all those cases dealt um primarily with sentencing uh after a conviction in adult court i didn't i i would be surprised if there were cases that kind of reflected on that and transfer again these these factors are they kind of rely upon the judge to consider the defendant's age and his maturity level and all these things in determining whether to transfer so i think it's kind of just ingrained in the factors themselves that the judge goes to consider who in fact is is on the um line here i think it goes without saying honestly um moving on to uh issue number two um regarding uh uh not removing the the juror uh the state submits that's uh well number one of this record is is incomplete for even discussing what our council was thinking um when it when it came to juror short um we have no idea why uh council did not remove juror short um i think you know of course a collateral proceeding where we'd actually hear from council would be a more appropriate forum for this discussion but if we are considering this issue uh the state submits that council was not ineffective um state submits that that as justice holdridge was was alluding to and discussing with council about the conversation between council and and juror short uh juror short did not in any way indicate that he was racist or they had that he had anything against this defendant he had simply uh affirmatively stated that that he believed white people or people um were more to commit crimes and he based that on what he saw in the news um actually he said black people were more likely to commit crimes oh did i misspeak i i apologize um uh again he he as justice albrecht um alluded to uh her short indicated he could be fair and impartial when followed when council followed up with him um you know the state submits this is different who who basically confirmed the same um his same belief that that black people were more likely to commit crimes than white people but the difference was that fonts had um indicated that he uh read information on this case uh in the media that's why that justified his uh removal from the case um that that type of um reveal was not uh made by by short he hadn't watched anything heard anything so he could have been impartial but based on the record that we have um the state submits the council's performance was not deficient um if this court finds it was the state submits and it was not prejudiced by council's um representation and that kind of leads right into issue three talking about the strength of of the evidence against the defendant um the state submits that um the evidence is very strong uh and that the state proved without that the defendant committed the murder of xeris fair again tb is a very very strong witness in this case she was with the with xeris fair when defendant had approached her she knew the defendant she was she she knew him from facebook and uh after a defendant shot xeris fair uh tb called the police they came she immediately um affected police towards defendant's identified the defendant in the photo lineup uh she identified the defendant in court she knew who he was she saw him at a crowbar at some point once before she also knew the other individual mr nelson that was with defendant at the time of the murder she had um she had seen him in school so she knew who these people were um she her her identification all along the way was rock solid um and um well there was an inconsistency wasn't there in regard to the color of the sweatshirt or something regard yes your honor regarding the the color of the sweatshirt but again that uh the state submits that inconsistency does not override the confident identifications that she's made the whole way um and regarding the sweatshirt even the defendant's mother identified him in a video um as the man in the video wearing the white shirt he had his one arm in this in the shirt one arm out of the shirt um again the state would submit that would of course lead to the logical conclusion the defendant was holding the firearm with the other arm shirt um i think that that goes a long way to corroborating tv's testimony and agents and states let's say because of the strength of the evidence against the defendant um that leads right into the fact that there was not uh prejudice against the defendant if this court were to find that trial counsel um quite a deficient performance so with that the uh the states um submits again that this court should find that the defense was appropriate and that the defendant's conviction uh and sentence be affirmed or any other questions i'd be happy to answer questions from the court no no no okay um miss sifa or sefa i'm sorry uh you are splitting your time in reply um no your honor i'm replying okay yeah you you may proceed thank you um to wanted to address um the question that justice mcdade had asked about transfer um and about the um factors of the seriousness of the offense and the prior adjudication um while we recognize um as counsel said that the transfer statute itself affords greater weight to the seriousness of the alleged offense and the prior the prior record of the minor these factors are not dispositive and do not create a presumption that a child should be transferred in fact juvenile court is an appropriate venue for even serious cases such as this one the law contemplates a careful balancing of the five factors not a two-factor test that pre-ordains transfer and for certain categories of cases and children in illinois that is actually the case that the law allows for presumption of presumptive and even automatic transfers for for to adult court for certain kids but savion's case is neither thus the seriousness of that of the current offense and one prior adjudication even if violent as it is does not presuppose a transfer decision and there must be sufficient evidence and consideration in the record as to each statutory factor to support the transfer order so the evidence on the factors of savion's history of domestic of abuse or neglect his mental health and education history and his willingness to participate in services are all weighed in all weighed in favor of resolving his case in the juvenile system and so the court's rejection of much of that positive evidence that would have opposed transfer sort of demonstrates that there's no way he could have overcome the seriousness of the offense or the one well what evidence is there in the record they rejected that rejection means something different i mean you got to be careful of our words here are you saying the court didn't acknowledge consideration of those or they're supposed to weigh them you know not reject right and so for example in the in the situation of the abuse and neglect factor which i hadn't addressed earlier that factor the court says i find there's no evidence of abuse or neglect in and in fact that that determination was contrary to the evidence the record does show indisputably show that there were allegations of choking and pushing of savion's mom orders of protection between savion's mom and savion's stepfather his stepfather was actually convicted of domestic battery against his mother so the even though savion was not the direct target of that that abuse the court's refusal to acknowledge that mitigating factor for savion is an abuse of discretion case law is clear that counsel i didn't read the record that way what i read the record to say what i heard what i when i read the judge's rendition of his decision he said there was no domestic violence between his between his parents and he said his mother moved away now your interpretation and my interpretation of the evidence may be different than that and we may take it more seriously than that but i did not see and i read it very carefully for this i did not see that the judge misreported the evidence the the judge um i think it's clear from the record did not acknowledge that evidence as mitigating and that evidence the case law is clear that that even if you are not the direct target of domestic violence living in a household that's disruptive that's violent that's chaotic is mitigating for the purposes of the transfer itself and we cite that in our brief and so the fact that the court takes this very narrow interpretation of what is actually abuse and neglect and excludes the red the undisputed evidence of neglect in violation of case law and of the transfer statute itself is an abuse of discretion on that factor um and your your reading of the record is different than mine then are there any other questions have you have you concluded um yes so we have more time oops the light has gone off okay thank you your honors and we ask that we respectfully ask that this court vacates convictions and remand for a new trial or alternatively vacate his sentence and demand for new sentencing hearing thank you for your time any questions from the court yeah no no okay thank you thank you counsel balls for your arguments in this matter it will be taken under advisement and written disposition will issue the clerk of our court will escort you out of our remote courtroom at this time